**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>AMAZON.COM SERVICES LLC, and AMAZON WEB SERVICES, INC.,<br><br>*Defendants*. | Case No. 7:26-cv-00308<br><br>**Complaint for Patent Infringement**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., in which Plaintiff Headwater Research LLC ("Headwater") alleges as follows against Defendants Amazon.com Services LLC and Amazon Web Services, Inc. (collectively, "Amazon"):

## INTRODUCTION

1. This complaint arises from Amazon's unlawful infringement of U.S. Patent Nos. 8,583,781 ("'781 patent"), 10,803,518 ("'518 patent"), and 11,494,837 ("'837 patent") (collectively, "Asserted Patents").

2. A core aspect of the accused systems is Amazon Web Services ("AWS"), Amazon's cloud-computing business, including AWS Identity and Access Management ("IAM"), Amazon's family of AWS IoT services ("AWS IoT"), and Amazon Simple Notification Service ("SNS"). As detailed below, Amazon makes substantial revenue and gains competitive advantages from its infringement of the Asserted Patents for these services.

3. AWS IAM is a policy-based authorization and access-control system at the center

of AWS. Every request to AWS APIs is authenticated and authorized by the IAM backend, which evaluates the policies applicable to the request. *See* https://docs.aws.amazon.com/IAM/latest/UserGuide/reference_aws-services-that-work-with-iam.html; https://aws.amazon.com/blogs/security/governance-at-scale-enforce-permissions-and-compliance-by-using-policy-as-code.

4. Another core aspect of the accused systems is AWS IoT, Amazon's family of cloud services, including AWS IoT Core, AWS IoT Device Defender, and AWS IoT Device Management, that connects fleets of end-user devices to Amazon's network systems over wireless networks. AWS IoT enforces per-device policies, audits IoT resources through AWS IoT Device Defender, and monitors cloud and device-side metrics against expected behavior.

5. Amazon's policy-based access control is fundamental to Amazon's ability to sell cloud services at scale. Amazon markets IAM's policy enforcement as the way customers achieve "governance at scale" on AWS, and is what allows Amazon to host its customers and their devices on shared cloud infrastructure while authorizing, controlling, and accounting for each customer's service usage. https://d1.awsstatic.com/whitepapers/Security/AWS_Governance_at_Scale.pdf.

6. The accused systems also enable Amazon to meter, bill, and charge for usage of its services. AWS bills customers based on measured usage of each service and applies billing and cost-management policies alongside its access-control policies.

7. On information and belief, Amazon's revenues derived from the Accused Instrumentalities make up a portion of its revenues from AWS. Amazon reported approximately $128.7 billion in AWS net sales for 2025 alone, with $45.6 billion of operating income in the same period. https://ir.aboutamazon.com/news-release/news-release-details/2026/Amazon-com-Announces-Fourth-Quarter-Results/.

**BACKGROUND REGARDING HEADWATER AND DR. RALEIGH**

8. Dr. Gregory Raleigh—the inventor of the Asserted Patents—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors including networking, cloud software, consumer services, wireless and military systems. Dr. Raleigh holds Ph.D. and Masters degrees in Electrical Engineering from Stanford University, and is the inventor of over 350 issued U.S. and international patents in several fields including radio systems and components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

9. Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://web.archive.org/web/20220628132409/https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

10. In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely adopted in modern multiple-input and multiple-output ("MIMO") radio communication and

implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

11. Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the capacity of wireless networks.

12. Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

13. After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks' chipset products significantly improved the speed and reliability of Wi-Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

14. Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), and 802.11ax (Wi-Fi 6).

15. After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones. He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

16. In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patents in this action describe and claim some of the extraordinary inventions developed by Dr. Raleigh.

## PLAINTIFF HEADWATER AND THE ASSERTED PATENTS

17. Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

18. Headwater is the owner of U.S. Patent No. 8,583,781, entitled "Simplified service network architecture," which issued on November 12, 2013. A copy of the '781 patent is attached to this complaint as Exhibit 1.

19. Headwater is the owner of U.S. Patent No. 10,803,518, entitled "Virtualized policy and charging system," which issued on October 13, 2020. A copy of the '518 patent is attached to this complaint as Exhibit 2.

20. Headwater is the owner of U.S. Patent No. 11,494,837, entitled "Virtualized policy

and charging system," which issued on November 8, 2022. A copy of the '837 patent is attached to this complaint as Exhibit 3.

**DEFENDANT AMAZON AND THE ACCUSED INSTRUMENTALITIES**

21. On information and belief, Defendant Amazon.com Services LLC is a Delaware limited liability company with a principal place of business at 410 Terry Avenue North, Seattle, WA 98109.

22. On information and belief, Amazon Web Services, Inc. is a Delaware corporation with a principal place of business at 410 Terry Ave. North, Seattle, WA 98109.

23. The Accused Instrumentalities include Amazon servers and services, and all versions and variations thereof since the issuance of the Asserted Patents, including without limitation Amazon Web Services ("AWS") services and infrastructure such as: AWS Identity and Access Management ("IAM"), including identity-based policies, resource-based policies, permissions boundaries, AWS Organizations service control policies and resource control policies, session policies, access control lists, Amazon Verified Permissions, and Cedar; Amazon's family of AWS IoT services ("AWS IoT"), including AWS IoT Core, AWS IoT Device Defender, AWS IoT Device Management, AWS IoT Events, AWS IoT FleetWise, AWS IoT Core for LoRaWAN, AWS IoT ExpressLink, and AWS Signer; Amazon Simple Notification Service ("SNS"); and any related components or services, including the products and services identified in Exhibits 4-6.

24. Defendants infringe by making, using, operating, importing, selling, and/or offering for sale the Accused Instrumentalities. Defendants also use, operate, place into service, and otherwise control accused AWS systems in the United States. Defendants also infringe Headwater's patented technology by inducing infringement by customers and end-users of the Accused Instrumentalities in the United States.

## JURISDICTION AND VENUE

25. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

26. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

27. This Court has personal jurisdiction over Amazon in this action because Amazon has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Amazon would not offend traditional notions of fair play and substantial justice. Amazon, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Western District of Texas, regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in Texas, and commits acts of infringement of Headwater's patents in this District by, among other things, supplying, distributing, developing, making, using, offering to sell, and selling the accused AWS services and related infrastructure, including AWS IAM, AWS IoT, and Amazon SNS.

28. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Amazon resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District.

29. On information and belief, Amazon provides the accused AWS services, including AWS IAM, AWS IoT, and Amazon SNS, to customers throughout this District, including in Austin. Requests that those customers make to AWS APIs, including requests from businesses, developers, and connected devices located in this District, are authenticated and authorized by the

accused IAM backend, which evaluates and enforces the policies applicable to each request.

30. On information and belief, Amazon employs thousands of engineering and other corporate personnel at its Austin Tech Hub in this District, including teams that work on AWS and cloud computing. Amazon has announced that its Austin Tech Hub has grown to more than 3,000 tech and corporate employees, with roles in fields including software and hardware engineering, research science, and cloud computing, and it occupies expanding office space in Austin. *See, e.g.*, https://press.aboutamazon.com/2019/3/amazon-expands-austin-tech-hub-and-announces-plans-to-create-800-new-tech-jobs; https://press.aboutamazon.com/2021/12/amazon-announces-plans-to-create-2-000-new-jobs-at-austin-tech-hub.

31. Amazon maintains numerous regular and established places of business in this District, including its Austin Tech Hub offices in Austin and fulfillment, sortation, and delivery facilities in this District, such as its SAT2 and SAT6 fulfillment centers in San Marcos, its SAT1 fulfillment center in Schertz, and its SAT3, SAT4, SAT5, and SAT9 facilities in and around San Antonio. On information and belief, Amazon uses the accused AWS services in the operation of and in its customer-transactions at all of its own facilities, devices, and logistics network in this District. *See, e.g.*, https://www.aboutamazon.com/impact/amazon-texas; https://press.aboutamazon.com/2013/1/amazon-announces-three-fulfillment-centers-in-texas (announcing Amazon's "1.2 million-square-foot site in Schertz"); https://www.businesswire.com/news/home/20201222005431/en/Amazon-Announces-Two-New-Fulfillment-Centers-and-New-Delivery-Station-in-San-Antonio-TX (announcing two San Antonio fulfillment centers and a San Antonio delivery station); https://www.aboutamazon.com/news/operations/amazon-fulfillment-center-photo-tour ("inside look" at Amazon's San Marcos, Texas fulfillment center). On information and belief, Amazon

uses the accused AWS services in the operation of its own facilities, devices, and logistics network in this District. *See* https://aws.amazon.com/about-aws/learn-from-amazon/e-commerce/ ("AWS is more than Amazon's cloud provider — it's the technology backbone of Amazon Operations' global infrastructure, enabling faster, safer, and smarter operations."); *id.* (Amazon's Vulcan fulfillment-center robots are "[b]uilt with AWS IoT").

32. On information and belief, numerous third parties in this District, including businesses, application developers, and operators of connected devices, use the accused AWS services in this District, including by making requests to AWS APIs that the accused IAM backend authenticates and authorizes, and by connecting IoT devices located in this District to AWS IoT.

**COUNT 1 – INFRINGEMENT OF THE '781 PATENT**

33. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

34. On November 12, 2013, the United States Patent and Trademark Office issued U.S. Patent No. 8,583,781, titled "Simplified service network architecture." Ex. 1.

35. Headwater is the owner of the '781 patent with full rights to royalties for damages for infringement, including full rights to recover past and future damages.

36. The written description of the '781 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

37. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '781 patent, and Headwater is entitled to damages for

Amazon's past infringement.

38. Amazon Web Services, Inc has directly infringed (literally and equivalently) and induced others to infringe the '781 patent by making, using, selling, offering for sale, or importing products, services, and systems including AWS that infringe the claims of the '781 patent and by inducing others to infringe the claims of the '781 patent without a license or permission from Headwater, such as, for example, inducing customers and developers to use the infringing AWS services, including AWS IAM, AWS IoT, and Amazon SNS.

39. Amazon.com Services LLC, has directly infringed (literally and equivalently) and induced others to infringe the '781 patent by using, selling, offering for sale, or importing products, services, and systems that infringe the claims of the '781 patent and by inducing others to infringe the claims of the '781 patent without a license or permission from Headwater, such as, for example, inducing customers to use the infringing AWS services, with each such instance also being an infringing sale by AWS.

40. Exhibit 4 provides a description of the Accused Instrumentalities and a chart showing how they infringe at least claim 1 of the '781 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

41. Amazon knowingly and intentionally induces and contributes to infringement of the '781 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, at least since receipt of this Complaint, Amazon has had knowledge of or has been willfully blind to its infringement of the '781 patent.

42. Despite this knowledge, Amazon continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '781 patent. Amazon does so knowing and intending that their customers will commit these

infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’781 patent, thereby specifically intending for and inducing their customers to infringe the ’781 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

43. Amazon has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’781 patent.

44. The ’781 patent claims are valid, enforceable, and claim patent-eligible subject matter. The written description describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is distinct from and improved upon what was conventional, generic, routine, or well-understood at the time of the invention.

45. Headwater has been damaged by Amazon’s infringement of the ’781 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 2 – INFRINGEMENT OF THE ’518 PATENT

46. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

47. On October 13, 2020, the United States Patent and Trademark Office issued U.S. Patent No. 10,803,518, titled “Virtualized policy and charging system.” Ex. 2.

48. Headwater is the owner of the ’518 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

49. The written description of the ’518 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

50. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’518 patent, and Headwater is entitled to damages for Amazon’s past infringement.

51. Amazon Web Services, Inc has directly infringed (literally and equivalently) and induced others to infringe the ’518 patent by making, using, selling, offering for sale, or importing products, services, and systems including AWS that infringe the claims of the ’518 patent and by inducing others to infringe the claims of the ’518 patent without a license or permission from Headwater, such as, for example, inducing customers and developers to use the infringing AWS services, including AWS IAM, AWS IoT, and Amazon SNS.

52. Amazon.com Services LLC, has directly infringed (literally and equivalently) and induced others to infringe the ’518 patent by using, selling, offering for sale, or importing products, services, and systems that infringe the claims of the ’518 patent and by inducing others to infringe the claims of the ’518 patent without a license or permission from Headwater, such as, for example, inducing customers to use the infringing AWS services, with each such instance also being an infringing sale by AWS.

53. Exhibit 5 provides a description of the Accused Instrumentalities and a chart showing how they infringe at least claim 1 of the ’518 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

54. Amazon knowingly and intentionally induces and contributes to infringement of the ’518 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, at least since receipt of this Complaint, Amazon has had knowledge of or has been willfully blind to its infringement of the ’518 patent.

55. Despite this knowledge, Amazon continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’518 patent. Amazon does so knowing and intending that their customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’518 patent, thereby specifically intending for and inducing their customers to infringe the ’518 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

56. Amazon has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’518 patent.

57. The ’518 patent claims are valid, enforceable, and claim patent-eligible subject matter. The written description describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is distinct from and improved upon what was conventional, generic, routine, or well-understood at the time of the invention.

58. Headwater has been damaged by Amazon’s infringement of the ’518 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**COUNT 3 – INFRINGEMENT OF THE ’837 PATENT**

59. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

60. On November 8, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,494,837, titled “Virtualized policy and charging system.” Ex. 3.

61. Headwater is the owner of the ’837 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

62. The written description of the ’837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’837 patent, and Headwater is entitled to damages for Amazon’s past infringement.

64. Amazon Web Services, Inc has directly infringed (literally and equivalently) and induced others to infringe the ’837 patent by making, using, selling, offering for sale, or importing products, services, and systems including AWS that infringe the claims of the ’837 patent and by inducing others to infringe the claims of the ’837 patent without a license or permission from Headwater, such as, for example, inducing customers and developers to use the infringing AWS services, including AWS IAM, AWS IoT, and Amazon SNS.

65. Amazon.com Services LLC, has directly infringed (literally and equivalently) and induced others to infringe the ’837 patent by using, selling, offering for sale, or importing products,

services, and systems that infringe the claims of the ’837 patent and by inducing others to infringe the claims of the ’837 patent without a license or permission from Headwater, such as, for example, inducing customers to use the infringing AWS services, with each such instance also being an infringing sale by AWS.

66. Exhibit 6 provides a description of the Accused Instrumentalities and a chart showing how they infringe at least claim 1 of the ’837 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

67. Amazon knowingly and intentionally induces and contributes to infringement of the ’837 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, at least since receipt of this Complaint, Amazon has had knowledge of or has been willfully blind to its infringement of the ’837 patent.

68. Despite this knowledge, Amazon continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’837 patent. Amazon does so knowing and intending that their customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’837 patent, thereby specifically intending for and inducing their customers to infringe the ’837 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

69. Amazon has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’837 patent.

70. The ’837 patent claims are valid, enforceable, and claim patent-eligible subject matter. The written description describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is distinct from and improved upon what was conventional, generic, routine, or well-understood at the time of the invention.

71. Headwater has been damaged by Amazon’s infringement of the ’837 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## JURY DEMAND

72. Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Headwater prays for the following relief:

A. A judgment in favor of Headwater that Amazon has infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B. A judgment and order requiring Amazon to pay Headwater past and future damages arising out of Amazon’s infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest, as provided under 35 U.S.C. § 284;

C. A judgment and order requiring Amazon to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

D. A judgment that Amazon’s infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

E. A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater's reasonable attorney's fees and costs; and

F. Any and all other relief to which Headwater may be entitled.

Dated: August 7, 2026

Respectfully submitted,

*/s/ Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
Paul A. Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
James N. Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
Ryan K. Lundquist
CO State Bar No. 56449
Email: rlundquist@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
Qi (Peter) Tong

TX State Bar No. 24119042
Email: ptong@raklaw.com
**RUSS AUGUST & KABAT**
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**